■ PHIPPS HOUSES SERVICES, INC., Appellant, v NEW YORK-PRESBYTERIAN HOSPITAL, as Successor to PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK, et al., Respondents. [32 NYS3d 85]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered April 14, 2015, which, to the extent appealed from, granted defendants' motion for summary judgment dismissing the complaint and on their conversion counterclaim to the extent of monies transferred by plaintiff to a BNY Mellon account, and denied plaintiff's motion for summary judgment as to liability, modified, on the law, to the extent of deny defendants' motion, and otherwise affirmed, without costs.

Plaintiff provided property management services to defendants pursuant to two agreements entered into in 1987 and 1991, respectively. Under the agreements, plaintiff hired employees who "engaged in the maintenance and management" of buildings owned by defendants, and defendants were obligated to reimburse plaintiff for all the "actual costs" related to those employees, including fringe benefits. The agreements each contain a survival clause specifying that defendants' reimbursement obligation survived termination of the agreement.

Plaintiff seeks a declaration that, following termination of the agreements in 2011, defendants remained contractually obligated to reimburse it for certain expenses related to the pension benefits provided to the employees that plaintiff had hired to maintain and manage defendants' buildings. Plaintiff contends that the reimbursement and survival clauses of the agreements unambiguously impose such a continuing obligation, or, at the least, that the agreements are ambiguous. Defendants contend that the agreements unambiguously limit their reimbursement obligation to the period in which the employees were "engaged in" providing services, and that they reimbursed plaintiff for all amounts billed annually for actual pension costs while the agreements were in effect.

Contrary to defendants' arguments, the relevant contractual provisions are "reasonably susceptible to more than one interpretation," and "the difficulty is not resolved by reading the agreement as a whole," or by examination of the extrinsic evidence presented (*LoFrisco v Winston & Strawn LLP*, 42 AD3d 304, 307 [1st Dept 2007]; *Credit Suisse Sec. [USA] LLC v Ask Jeeves, Inc.*, 71 AD3d 590, 590 [1st Dept 2010]). Thus,

the agreements are ambiguous, and the matter is not appropriate for summary disposition.

The account stated doctrine does not avail defendants, because there is no "agreement with respect to the balance due" following termination of the agreements (*Digital Ctr., S.L. v Apple Indus., Inc.*, 94 AD3d 571, 572-573 [1st Dept 2012]).

As to defendants' conversión counterclaim, there are issues of fact precluding summary judgment on whether plaintiff's conduct with respect to the money in the Operating Accounts constituted conversion as a matter of law. "It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself" (*Mandelblatt v Devon Stores*, 132 AD2d 162, 167-168 [1st Dept 1987]). Here, there is an issue of fact as to whether plaintiff breached a legal duty independent of the contract.

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Manzanet-Daniels and Webber, JJ.

Kapnick, J., dissents in part in a memorandum as follows: I dissent only to the extent that I would affirm that portion of the motion court's order granting defendants' motion for summary judgment on their conversion counterclaim.[1]

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (*State of New York v Seventh Regiment Fund*, 98 NY2d 249, 259 [2002] [internal quotation marks omitted]).[2] Here, defendants established both elements of their conversion claim with respect to the funds transferred to the BNY Mellon account—their "possessory right or interest in the property," and plaintiff's "dominion over the property or interference with it, in derogation of [their] rights" (*Colavito v*

---

**1.** The motion court only granted defendants' conversion counterclaim to the extent of the monies transferred to the BNY Mellon account, and severed the portion of the counterclaim relating to the remaining balance in the Operating Accounts because the court was not able to determine from the record the amount of the remaining balance, if any. The record shows that the amount of the remaining balance was not clearly discernible and further fact-finding is necessary to adjudicate that portion of the conversion counterclaim.

**2.** "Money, if specifically identifiable, may be the subject of a conversion action" (*Peters Griffin Woodward, Inc. v WCSC, Inc.*, 88 AD2d 883, 883 [1st Dept 1982]) and "[t]he funds of a specific, named bank account are sufficiently identifiable" (*Republic of Haiti v Duvalier*, 211 AD2d 379, 384 [1st Dept 1995]).

*New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006]). Although plaintiff's possession of the funds was initially lawful, it ceased being lawful as a result of plaintiff's refusal to return the funds upon defendants' demand and its transfer of a portion of the funds to a separate bank account without defendants' authorization.

I disagree with the majority's conclusion that there is an issue of fact as to whether this conduct constitutes a conversion. Although "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract" (*Peters Griffin*, 88 AD2d at 884), "[t]he same conduct which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract relationship which is independent of the contract itself" (*Hamlet at Willow Cr. Dev. Co., LLC v Northeast Land Dev. Corp.*, 64 AD3d 85, 112-113 [2d Dept 2009] [internal quotation marks omitted], *lv dismissed* 13 NY3d 900 [2009]; *see also Sebastian Holdings, Inc. v Deutsche Bank AG.*, 78 AD3d 446, 447-448 [1st Dept 2010]). Here, the underlying contracts required that plaintiff "deposit all monies received by" plaintiff "for or on behalf of" defendants in a designated bank account (the operating accounts). While there was a contractual obligation to deposit funds belonging to defendants into the operating accounts, these funds were merely collected by plaintiff "for or on behalf of" defendants and entrusted to plaintiff in its role as defendants' agent. As such, the funds belong to defendants regardless of the underlying contracts and plaintiff was obligated as a matter of common law to return the funds to their rightful owner upon request. Since defendants' right to a return of the funds does not stem (solely) from the contracts, plaintiff's refusal to return the funds upon request constitutes conversion as a matter of law.